UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NATALIE GARCIA,

                   Plaintiff,

        v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

                   Defendant.

_____

<u>DECISION & ORDER</u>

13-CV-6433P

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Natalie Garcia ("Garcia") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Supplemental Security Income Benefits and Disability Insurance Benefits ("SSI/DIB"). Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge.  (Docket # 14).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket ## 12, 13).  For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

## BACKGROUND

### I.      Procedural Background

Garcia applied for SSI/DIB on December 8, 2010, alleging disability beginning on January 1, 2009, due to mental health issues, post-traumatic stress disorder ("PTSD") and asthma.  (Tr. 138-45, 169).[1]  On February 18, 2011, the Social Security Administration denied both of Garcia's claims for benefits, finding that she was not disabled.  (Tr. 49-51).  Garcia requested and was granted a hearing before Administrative Law Stanley K. Chin (the "ALJ").  (Tr. 93-97).  The ALJ conducted a hearing on January 17, 2012.  (Tr. 22-48).  In a decision dated January 23, 2012, the ALJ found that Garcia was not disabled and was not entitled to benefits.  (Tr. 55-65).

On June 18, 2013, the Appeals Council denied Garcia's request for review of the ALJ's decision.  (Tr. 1-5).  Garcia commenced this action on August 15, 2013 seeking review of the Commissioner's decision.  (Docket # 1).

### II.      Relevant Medical Evidence[2]

Treatment records indicate that Garcia commenced mental health treatment at Evelyn Brandon Health Center in November 2010.  (Tr. 652).  Initially, Garcia was evaluated for treatment by Amy Rosechandler ("Rosechandler"), MS, who diagnosed Garcia with alcohol dependence, anxiety disorder not otherwise specified, psychotic disorder not otherwise specified and rule out bipolar disorder.  (Tr. 652, 668).  Garcia reported a history of physical abuse, including domestic violence incidents involving her former husband.  (Tr. 653).  Garcia had recently moved to the Rochester area.  (*Id.*).

---

[1]  The administrative transcript shall be referred to as "Tr. __."

[2]  Those portions of the treatment records that are relevant to this decision are recounted herein.

Garcia reported that she had been hospitalized in 2009 for a "nervous breakdown" after a mental health arrest for preaching in the streets and refusing to move. (Tr. 655). Also in 2009, Garcia was incarcerated following an incident in which she stabbed her former husband with a knife. (Tr. 671). According to Garcia, the charges were ultimately dismissed. (*Id.*). Garcia continued to attend appointments with Rosechandler until January 13, 2011, when she was reassigned to Jamie Lee Watt ("Watt"), MS, MHC, for further treatment. (Tr. 680). The treatment notes indicate that Garcia was reassigned in order to attend treatment at a location closer to her residence. (*Id.*).

Garcia met with Watt approximately twice a month between January 2011 and May 2012. (Tr. 680-795, 813-54). During those appointments, Garcia routinely presented with a depressed or anxious mood and affect and complained of depression, anxiety and isolation. (*Id.*). Garcia described a variety of stressors that she experienced in her life, including volatile relationships with her significant others. (*Id.*). Watt generally provided guidance and taught Garcia skills designed to assist her in lessening her symptoms of anxiety and depression. (*Id.*). During these sessions, Watt assessed Garcia with a Global Assessment of Functioning ("GAF") to range between 70 and 55. (*Id.*). In January 2011, Garcia learned that she was pregnant, and her child was born in August. (*Id.*).

Garcia also attended appointments with Kevin McIntyre ("McIntyre"), MD, beginning in June 2011. (*Id.*). Because Garcia was pregnant, McIntyre advised against commencing medications to address her mental impairments. (*Id.*). In August 2011, McIntyre prescribed Prozac and increased the dosage in October 2011. (*Id.*). In February 2012, McIntyre further increased the dosage in response to Garcia's reports of mood swings, depression, poor

appetite, nightmares, difficulty sleeping, isolation, frustration and thoughts of hurting herself. (*Id.*).

On June 30, 2011, Watt completed a mental Residual Functional Capacity ("RFC") questionnaire relating to Garcia. (Tr. 528-32). Watt reported that she had treated Garcia every other week for the previous six months. (*Id.*). According to Watt, Garcia had been diagnosed with anxiety disorder, not otherwise specified, and borderline traits. (*Id.*). Watt assessed Garcia's current GAF to be 60 and noted that Garcia's highest GAF for the past year was 60.[3] (*Id.*). Watt indicated that Garcia had responded well to treatment. (*Id.*). Watt indicated that Garcia demonstrated symptoms of depression and anxiety and had a history of psychotic symptoms that were not currently present. (*Id.*). Watt also noted that Garcia was pregnant and had a history of abusive relationships. (*Id.*). According to Watt, Garcia was developing coping skills during therapy sessions, and she recommended further treatment. (*Id.*).

Watt opined that Garcia was unable to meet competitive standards[4] in her ability to understand, remember and carry out detailed instructions, set realistic goals or make plans independently of others, and deal with stress of semi-skilled and skilled work. (*Id.*). According to Watt, Garcia was seriously limited[5] in her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms, accept instructions and respond appropriately to criticism, get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes, and deal with normal work stress. (*Id.*). Watt further

---

[3]  In fact, the treatment records suggest that Watt assessed Garcia's GAF to range between 70 and 65 during January and February 2011. (*See*, *e.g.*, Tr. 680, 688, 696, 704).

[4]  "Unable to meet competitive standards" was defined to mean that the individual "cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting." (*Id.*).

[5]  "Seriously limited" was defined to mean that the "ability to function in this area is seriously limited and would frequently be less than satisfactory in any work setting." (*Id.*).

opined that Garcia had a limited, but satisfactory ability to maintain regular attendance and be punctual within customary, usually strict tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted, perform at a consistent pace without an unreasonable number and length of rest periods, ask simple questions or request assistance, respond appropriately to changes in a routine work setting, interact appropriately with the general public, maintain socially appropriate behavior, travel in unfamiliar places and use public transportation.  Additionally, Watt opined that Garcia was unlimited or "very good" in her ability to remember work-like procedures, understand, remember and carry out very short and simple instructions, maintain attention for two-hour segments, make simple work-related decisions, recognize normal hazards and take appropriate precautions and adhere to basic standards of neatness and cleanliness.  (*Id.*).

Watt opined that Garcia would be absent from work more than four days a month due to her impairments and that she would not be able to engage in full-time competitive employment on a sustained basis.  (*Id.*).

## DISCUSSION

### I.    Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also*

*Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§§ 423(d)(1)(A) & 1382c(a)(3)(A). When assessing whether a claimant is disabled, the ALJ

must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.

1982) (*per curiam*). The five steps are:

> (1)   whether the claimant is currently engaged in substantial
>         gainful activity;
>
> (2)   if not, whether the claimant has any "severe impairment"
>         that "significantly limits [the claimant's] physical or mental
>         ability to do basic work activities";
>
> (3)   if so, whether any of the claimant's severe impairments
>         meets or equals one of the impairments listed in Appendix
>         1 of Subpart P of Part 404 of the relevant regulations;
>
> (4)   if not, whether despite the claimant's severe impairments,
>         the claimant retains the residual functional capacity to
>         perform his past work; and
>
> (5)   if not, whether the claimant retains the residual functional
>         capacity to perform any other work that exists in significant
>         numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467.

"The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

step five the burden shifts to the Commissioner to 'show there is other gainful work in the

national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383

(quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

### A.   The ALJ's Decision

In his decision, the ALJ followed the required five-step analysis for evaluating

disability claims. (Tr. 55-65). Under step one of the process, the ALJ found that Garcia has not

engaged in substantial gainful activity since January 1, 2009, the alleged onset date. (Tr. 57). At

step two, the ALJ concluded that Garcia has the severe impairments of major depressive

disorder, anxiety disorder, psychotic disorder, asthma, and alcohol dependence.  (*Id.*).  At step

three, the ALJ determined that Garcia does not have an impairment (or combination of

impairments) that meets or medically equals one of the listed impairments.  (Tr. 58).  With

respect to Garcia's mental impairments, the ALJ found that Garcia suffers from moderate

difficulties in maintaining concentration, persistence or pace, and social functioning, and mild

limitations in performing activities of daily living.  (*Id.*).  The ALJ concluded that Garcia has the

RFC to perform light work with environmental limitations and no exposure to respiratory

irritants, and could perform simple, routine, and repetitive tasks in a work environment free of

fast-paced production requirements, involving only simple work-related decisions and routine

workplace changes with only occasional interaction with the public, coworkers and supervisors.

(Tr. 59).  At step four and five, the ALJ determined that Garcia was unable to perform her prior

work, but that other jobs existed in the national and regional economy that Garcia could perform,

including the positions of bench assembler, mail clerk and office helper.  (Tr. 63-65).

Accordingly, the ALJ found that Garcia is not disabled.  (*Id.*).

      **B.**     **Garcia's Contentions**

      Garcia contends that the ALJ's determination that she is not disabled is not

supported by substantial evidence and is the product of legal error.  (Docket # 13-1).  First,

Garcia contends that the ALJ erred in evaluating the opinion evidence contained in the record.

(*Id.* at 16-20).  Next, Garcia maintains that the ALJ's mental RFC assessment is not based upon

substantial evidence because he improperly relied upon Garcia's activities of daily living to

determine that Garcia's complaints were contradicted by the record.  (*Id.* at 20-22).

II.    **Analysis**

I turn first to Garcia's contention that the ALJ's mental RFC assessment was flawed because the ALJ improperly discounted Watt's June 23, 2011 opinion.  (Docket ## 13-1 at 16-20, 18 at 1-7).  Specifically, the ALJ stated:

> I also accord little weight to the opinion of the claimant's counselor, Mrs. Watt, . . . since this opinion is that of an unacceptable medical source.  Even if Mrs. Watt's opinion could be taken into consideration, Mrs. Watt's evaluation was inconsistent since she gave the claimant [a] GAF of 60 and also indicated that the claimant would [be] absent from work more than four times a month.

(Tr. 63).

Garcia argues that the ALJ improperly discounted Watt's opinion solely on the grounds that Watts is not an acceptable medical source.  (Docket ## 13-1 at 16-20, 18 at 1-7).  The government maintains that the ALJ provided other grounds for discounting Watt's opinion.  (Docket # 16 at 1-2).  Garcia also contends that the ALJ failed to provide good reasons for his decision that Watt's opinion was entitled to "little weight."  (*Id.*).  Specifically, Garcia maintains that the ALJ failed to evaluate the relevant factors used to assess medical opinions in discounting Watt's opinion.  (*Id.*).  Finally, Garcia argues that the ALJ improperly determined that Watt's opinion that Garcia was likely to be absent more than four days a month was inconsistent with her assessment that Garcia had a GAF of 60.  (*Id.*).

An ALJ should consider "all medical opinions received regarding the claimant." *See Speilberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R. § 404.1527(d)).  When evaluating medical opinions, regardless of their source, the ALJ should consider the following factors:

> (1)    the frequency of examination and length, nature, and extent of the treatment relationship;

(2)     the evidence in support of the physician's opinion;

(3)     the consistency of the opinion with the record as a whole;

(4)     whether the opinion is from a specialist; and

(5)     whatever other factors tend to support or contradict the
        opinion.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010); *see Speilberg v. Barnhart*,

367 F. Supp. 2d at 281 ("factors are also to be considered with regard to non-treating sources,

state agency consultants, and medical experts") (citing 20 C.F.R. §§ 404.1527(d) and (e)); *House*

*v. Astrue*, 2013 WL 422058, *3 (N.D.N.Y. 2013) ("[m]edical opinions, regardless of the source

are evaluated considering several factors outlined in 20 C.F.R. §§ 404.1527(c), 416.927(c)").

Licensed clinical social workers are not considered "acceptable medical sources"

under the regulations.  20 C.F.R. §§ 404.1513(a), 416.913(a).  Instead, clinical social workers are

considered "other sources" within the meaning of 20 C.F.R. §§ 404.1513(d) and 416.913(d).  As

such, their opinions "cannot establish the existence of a medically determinable impairment."

*See* SSR 06-03P, 2006 WL 2329939, *2 (2006).  Their opinions may be used, however, "to show

the severity of the individual's impairment(s) and how it affects the individual's ability to

function."  *See id.*

Social Security Ruling 06-03P recognizes that "[m]edical sources . . . , such as . . .

licensed clinical social workers, have increasingly assumed a greater percentage of the treatment

and evaluation functions previously handled primarily by physicians and psychologists."  *Id.* at

*3.  The ruling recognizes that such opinions are "important and should be evaluated on key

issues such as impairment severity and functional effects, along with the other relevant evidence

in the file."  *Id.*  The ruling directs the ALJ "to use the same factors for evaluation of the

opinions of acceptable medical sources to evaluate the opinions of medical sources who are not

10

acceptable medical sources, including licensed social workers." *Genovese v. Astrue*, 2012 WL 4960355, *14 (E.D.N.Y. 2012) (internal quotations omitted). "An ALJ is not required to give controlling weight to a social worker's opinion; although he is not entitled to disregard it altogether, he may use his discretion to determine the appropriate weight." *Cordero v. Astrue*, 2013 WL 3879727, *3 (S.D.N.Y. 2013); *Jones v. Astrue*, 2012 WL 1605566, *5 (N.D.N.Y.) ("the Second Circuit has held that 'the ALJ has discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him'") (quoting *Diaz v. Shalala*, 59 F.3d 307, 313-14 (2d Cir. 1995)), *report and recommendation adopted*, 2012 WL 1605593 (N.D.N.Y. 2012); *Allen v. Astrue*, 2008 WL 660510, *8 (N.D.N.Y. 2008) (although not an acceptable medical source, "[a]s plaintiff's longtime treating psychotherapist and the only treating source who evaluated the disabling effects of plaintiff's mental impairments, [plaintiff's therapist's] opinion was relevant to the ALJ's disability determination . . . [t]hus, the ALJ should have articulated why he discredited [the therapist's] reports").

Garcia is correct that the ALJ should not have discounted the opinion of a licensed social worker solely on the grounds that she is not an acceptable medical source under the regulations. His opinion makes clear, however, that the ALJ discounted Watt's opinion for another independent reason. *See Prue v. Comm'r of Soc. Sec.*, 2014 WL 37669, *9 (D. Vt. 2014) (ALJ incorrectly stated opinion was entitled to little weight because it was not from an acceptable medical source; "the error was harmless because the ALJ gave other good reasons, supported by substantial evidence, for the weight assigned to [the opinion]"). Thus, the salient question is whether the additional reason provided by the ALJ constituted a sufficient basis upon which to discount Watt's opinion.

11

In his decision, the ALJ explained that he discounted Watt's opinion because it was "inconsistent since she gave the claimant [a] GAF of 60 and also indicated that the claimant would [be] absent from work more than four times a month." (Tr. 63). Garcia maintains that the ALJ's analysis improperly ignores the evaluative factors outlined above and, in any event, improperly relies upon the GAF score alone. (Docket # 18 at 4-7). I agree.

"The GAF is a scale promulgated by the American Psychiatric Association to assist in tracking the clinical progress of individuals [with psychological problems] in global terms."[6] *Kohler v. Astrue*, 546 F.3d 260, 262 n.1 (2d Cir. 2008) (internal quotations omitted); *see also Petrie v. Astrue*, 412 F. App'x 401, 406 n.2 (2d Cir. 2011) ("GAF is a scale that indicates the clinician's overall opinion of an individual's psychological, social and occupational functioning"). GAF scores may be relevant to an ALJ's severity and RFC determinations, although they are "intended to be used to make treatment decisions . . . and not disability determinations." *Henry v. Colvin*, 2014 WL 652945, *4 (W.D.N.Y. 2014) (internal quotations and citations omitted). In evaluating opinion evidence, an ALJ may properly consider, among other information, whether a treating source's opinion is consistent with the GAF scores assessed by that treating source. *See Zokaitis v. Astrue*, 2010 WL 5140576, *15-16 (D. Vt. 2010) (ALJ did not err when discounting treatment source opinions where the ALJ concluded that "the limitations embodied in each of those assessments are not consistent with and are out of proportion to the objective findings of progress documented in each source's treatment progress notes"), *aff'd*, 2012 WL 498441, *1 (2d Cir. 2012) (ALJ properly discounted treating source

---

[6] Garcia correctly notes that the Social Security Administration recently issued guidance for all state and federal adjudicators concerning how to evaluate GAF ratings in assessing disability claims involving mental disorders. (Docket # 18 at 5-6) (citing *Mainella v. Colvin*, 2014 WL 183957, *5 (E.D.N.Y. 2014)). That guidance was effective July 22, 2013, after the ALJ rendered his decision in this case. *See Holloman v. Colvin*, 2014 WL 5090030, *7 (E.D. Pa. 2014) ("[t]o the extent that AM-13066 changed the weight an ALJ may accord to GAF evidence, [plaintiff] has provided no evidence that the 2013 policy applies retroactively to the ALJ's 2012 decision[;] . . . changes in the SSA regulations and corresponding policies typically apply only in cases decided after the enactment of the changed regulation and/or policy") (internal quotations omitted).

opinion based on factors set forth in 20 C.F.R. § 416.927 where it was inconsistent with the GAF score that the treating source consistently assigned to plaintiff); *Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 177 (6th Cir. 2009) ("[treating source] consistently estimated [plaintiff's] [GAF] score to be in the mid-50's indicating only 'moderate' symptoms[;] [o]n this record, we find no error in the ALJ's conclusion that [the treating source's] assessment that [plaintiff's] impairments were debilitating was inconsistent with his treatment notes and prior assessments"); *Wasiewicz v. Colvin*, 2014 WL 5465451, *3 (W.D.N.Y. 2014) (noting that treating source's opinion was "inconsistent with the fact that, throughout his treatment of [p]laintiff, he assessed her with [GAF] scores ranging from 56 to 65"); *Navedo v. Colvin*, 2014 WL 6983358, *2 (D. Mass. 2014) ("[t]he ALJ also found that the [GAF] score . . . was inconsistent with the 'extreme' limitations set forth therein and determined that it was not only internally inconsistent but was also inconsistent with the record evidence"); *Blasco v. Comm'r of Soc. Sec.*, 2014 WL 3778997, *5 (N.D.N.Y. 2014) ("[t]he ALJ explained that he discounted this opinion because it was inconsistent with [plaintiff's] treatment records, the nature of the [doctor's] treatment relationship with [plaintiff] was unclear, and the opinion rated [plaintiff's] current GAF as sixty-five, indicating only mild symptoms"); *Foreman v. Colvin*, 2013 WL 3200615, *11 (N.D. Ohio 2013) ("[treating source's] opinions that [plaintiff] is markedly impaired in her abilities to maintain a schedule, complete a normal workday/workweek, or perform at a consistent pace without an unreasonable number of interruptions or work absences are simply inconsistent with the 'mild symptoms' represented by a GAF score of 65 to 70"); *Hill v. Astrue*, 2013 WL 209647, *3 (W.D.N.Y. 2013) (treating source's opinion that plaintiff was unable or limited in his ability to perform activities associated with unskilled work was "inconsistent with the [treating source's] reported GAF score of 70"); *Thomas v. Astrue*, 2010 WL 1388997, *13

(S.D.N.Y. 2010) (ALJ properly concluded that treating source's opinions were "inconsistent with the overall evidence[,] including her own reports[;] . . . [the GAF scores assigned by the treating source] are inconsistent with [the treating source's] opinion that [plaintiff] is severely limited in her functional capacity and thus cannot work"); *Palmer v. Astrue*, 2009 WL 36402, *10 (E.D. Mo. 2009) ("the [c]ourt believes that the ALJ was entitled to give less than controlling weight to [doctor's assessment] regarding [p]laintiff's marked functional limitations, in light of the current (most-recent) GAF score of 70 noted by [the doctor] in the same [assessment]"); *Reyes ex rel. E.F. v. Astrue*, 2008 WL 3211275, *4 (W.D.N.Y. 2008) ("[t]he ALJ also found the opinion inconsistent with a [GAF] of 50-60").

    Although the ALJ was permitted to consider whether Watt had assessed limitations that were inconsistent with the GAF score, the ALJ was not permitted to discount Watt's assessment *solely* on the basis of that alleged inconsistency.  *See Hall v. Colvin*, 18 F. Supp. 3d 144, 153 (D.R.I. 2014) ("[t]he ALJ's reliance on GAF scores to discredit or find credible certain medical evidence was error"); *Price v. Colvin*, 2014 WL 1246762, *7 (D. Kan. 2014) (ALJ improperly discounted treating source opinion on the grounds that the limitations identified were inconsistent with the GAF score assessed by that treating source; "standing alone, a GAF score, which can reflect social and/or occupational functioning, does not necessarily evidence whether an impairment seriously interferes with a claimant's ability to work[;] [b]ecause a GAF score may not relate to a claimant's ability to work, the score, standing alone, without further explanation, does not establish whether or not plaintiff's impairment severely interferes with an ability to perform basic work activities") (internal citation omitted); *Carton v. Colvin*, 2014 WL 108597, *14-15 (D. Conn. 2014) (ALJ improperly discounted treating source opinion on the grounds that "the finding of such extreme difficulties is patently inconsistent with

[the doctor's] own assessment of a GAF of 55"; "the ALJ erred in relying on the GAF score as an indicat[ion] of the severity of the plaintiff's mental impairment") (internal quotation omitted); *Restuccia v. Colvin*, 2014 WL 4739318, *8-9 (S.D.N.Y. 2014) (ALJ improperly "concluded that [the treating psychiatrist's] opinion was inconsistent with the psychiatrist's own assessment of the claimant's GAF score showing only mild limitations[;] . . . [t]he ALJ did not have a sufficient basis for not according controlling weight to [the psychiatrist's] opinion"); *Daniel v. Astrue*, 2012 WL 3537019, *10 (E.D.N.Y. 2012) (ALJ failed to provide good reasons for giving no weight to treating source opinions; "[the doctor's] GAF score . . . , while relevant, does not contradict his ultimate finding that [plaintiff] was disabled and unable to work because a GAF score does not have a direct correlation to the severity requirements in the [SSA's] disorder listings") (internal quotations omitted); *Smith v. Astrue*, 565 F. Supp. 2d 918, 925 (M.D. Tenn. 2008) ("the GAF score, alone, cannot discredit [the doctor's] assessment of [p]laintiff's limitations . . . [and] the ALJ's reference to supposed 'inconsistencies' is therefore insufficient to provide 'good reasons' for his assignment of 'little weight' to the opinions of . . . a treating source").  Rather, the ALJ was required to evaluate Watt's opinion in light of the factors identified above and in the context of the record as a whole.  *See Walterich v. Astrue*, 578 F. Supp. 2d 482, 515 (W.D.N.Y. 2008) (ALJ improperly discounted treating physician opinion because the limitations assessed were inconsistent with the rated GAF score; "[t]he ALJ, however, is not permitted to rely on any test score alone[;] . . . [n]o single piece of information taken in isolation can establish whether [a claimant is disabled]") (internal quotations omitted). At the very least, because the apparently inconsistent GAF score was the only basis provided for discounting Watt's opinion, the ALJ should have re-contacted Watt to obtain an explanation for the apparent inconsistency.  *See id.* at 517 ("insofar as the ALJ found [the doctor's] assessment

of [p]laintiff's GAF at 55 as inconsistent with [the doctor's] opinion regarding [p]laintiff's inability to work, . . . the ALJ was obligated to re-contact [the doctor] to obtain an explanation for the apparent inconsistency"); *cf. Ayers v. Astrue*, 2009 WL 4571840, *2 (W.D.N.Y. 2009) ("where, as here, the particular treating physician's opinion that is at issue is unsupported by any medical evidence and where the medical record is otherwise complete, there is no duty to recontact the treating physician for clarification").

The ALJ's failure to articulate good reasons for discounting Watt's opinion constituted legal error, and remand is appropriate for the ALJ to determine the weight, if any, to accord Watt's opinion based upon the relevant factors and the record as a whole. Although the ALJ may conclude that Watt's opinion is still entitled to "little weight," he must nonetheless provide good reasons supported by substantial evidence for his determination. Because re-evaluation of the weight to be assigned to Watt's opinion could affect the ALJ's RFC assessment and the rest of the sequential evaluation process, I do not reach Watt's contention that the RFC assessment was otherwise unsupported by substantial evidence. *Norman v. Astrue*, 912 F. Supp. 2d 33, 86 (S.D.N.Y. 2012) ("[b]ecause I find legal error requiring remand, I do not reach the issue of whether the ALJ's decision was supported by substantial evidence").

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings (**Docket # 12)** is **DENIED**, and Garcia's motion for judgment on the pleadings (**Docket # 13)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this

case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
         March 20, 2015